## Mayberry v. Commonwealth.

Jan. 28, 1944.

Mont Walker for appellant.

Hubert Meredith, Attorney General, and Blanche Mackey, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellant, Oliver Mayberry, was convicted in the Boyd circuit court of maliciously cutting and stabbing Ed Rowe, a policeman, with the intent of killing him, but from which he did not die, an offense denounced in subsection (2) of KRS 435.170, section 1166, Carroll's Statutes.

The punishment inflicted by the jury was confinement in the penitentiary for a period of four years. The motion for a new trial, which the court overruled, contained six grounds, the fifth being: "Because the court erred in not sustaining defendant's motion, at the close of all the testimony, to reduce the charge to the offense of cutting and wounding in sudden affray or in sudden heat and passion under section 1242, now 435.180 KRS, and to not instruct on the offense as defined in section 1166, now section 435.170 KRS." Argument of counsel for defendant in his brief is directed solely to that (fifth) ground, which—according to the established rule in this court—is an abandonment of all the other grounds although counsel states in his brief that he still insists on the other grounds, but to which he devotes no part of his brief in their support. However, the constructively abandoned grounds (1, 2, 3, 4 and 6) are so devoid of merit as to force the conclusion that counsel so considers them and for which reason he did not exercise himself to urge them. Our conclusion also is that ground (5) supra—to the discussion of which, as we have said, the brief is exclusively devoted—should also be classified as wholly without merit, which we will now endeavor to point out.

The offense was committed between 9 and 10 o'clock p. m., a short distance from the corner of Greenup Avenue where it intersects 15th Street in the city of Ashland. According to all the evidence in the case (except that given by appellant's brother-in-law), the victim and a companion, one Westfall, were standing on the sidewalk in front of John Scott's Keystone Bar when defendant and his brother-in-law, Charles Arthur, emerged therefrom and approached the policeman and inquired if he (policeman) was mad at him, receiving a negative answer, to which appellant replied, "I am not mad at you;" the evidence indisputably disclosing that appellant's victim had arrested defendant about a month previously for driving an automobile when intoxicated,

to which charge appellant plead guilty and paid the fine. The policeman in that conversation explained to appellant that he was sorry that he was compelled to make the arrest, but that his duties required it under the circumstances. Appellant was considerably intoxicated, according to the Commonwealth's testimony, whilst the brother-in-law, Arthur, was reeling drunk, and the policeman advised appellant to remove his brother-in-law from the streets in order to escape arrest and punishment for being so intoxicated in a public place. After that brief conversation appellant and his brother-in-law proceeded a short distance to the corner, and then turned at right angles in the direction of a taxicab office operated by a Mr. Murphy, which was located only a short distance from the corner. Rowe and his companion, Westfall, remained where that meeting occurred and conversed for some five or ten minutes when they separated, and Rowe turned at the same corner that appellant had, intending to enter the taxicab office in order to procure transportation to his home.

Appellant and his brother-in-law had stopped just in front of that office, and according to the policeman, when he arrived near them, appellant "dropped his dinner bucket and hit at me with a knife" inflicting several wounds which the witness described and then said: "I pushed him away like that (indicating) and I shoved him back into a plate glass window with my left hand and I jumped back from him and drawed my gun with my right hand and threw the gun on him. He had stabbed me then and I stopped just as one of the drivers came out. I hollered for Jim Murphy to run there, and he said, 'Ed, he has got a knife,' and then I said 'Drop that knife,' and one of the cab drivers grabbed him and I had them to call the station to bring an ambulance and I stayed there until Sam Berry came and I got in a cab and went to the hospital."

The taxicab office inmates heard the scuffling and responded to the call of Rowe and they verified the latter's statement as to what occurred after they came in view of the parties. They did not see the beginning of the difficulty but they saw defendant wielding his hand and striking at the policeman and later discovered that he had a knife in his right hand which he dropped when the policeman threw his pistol on him. Other witnesses for the Commonwealth who were in position to see had

their attention attracted to the scene after the melee started and gave the same description of subsequent events as did the policeman, and the witnesses at the taxicab office. One witness testified that previous to the melee, appellant referred to his former arrest by the policeman and other witnesses verified Rowe as to appellant's reference to the arrest in one, or the other meetings on the night of the commission of the offense, thus clearly showing that appellant's former arrest by his victim was rankling in his bosom thereby furnishing grounds for the conclusion that he harbored revenge, which from the entire record appears quite logical.

Appellant in giving his testimony said that in the first conversation in front of Scott's Bar his victim told him that he and his brother-in-law ''had better get off of the street,'' which the policeman admitted, and that he had given the advice in order to prevent them from being arrested because of their intoxication. Therefore, such advice and reference to arrest may have also played a part in producing a motive on the part of appellant for the commission of the crime for which he was convicted which was perpetrated at the second and shortly later meeting in front of the taxicab office. Appellant also claimed that he was not intoxicated, but he admitted that his brother-in-law was in that condition, and each of them testified that they quit work at noon on that day and consumed the entire afternoon in rambling around over different parts of the city of Ashland, spending most of the time in Scott's saloon where, according to the witness, Arthur, they more or less frequently and extensively imbibed, although appellant stated that during the entire afternoon he had taken but one glass of beer, which, if true, and the other testimony in the case touching his condition was also true, must have contained a dynamic content not found in beer.

Continuing his testimony appellant stated that his victim told him that if he and his brother-in-law did not get off the street he would arrest them but permitted them to depart without arrest under the admonition that he had given them. He then said: ''He (Rowe) overtook me and my brother-in-law. He says, you G— D— red headed s— o— b— you had better get off of the street. I arrested you once and I will arrest you again. I says, no, I haven't done anything to be arrested for

and started on and he jerked his pistol and drew it on me'' which statement was expressly denied by the policeman and was also stoutly contradicted by other facts and circumstances in the case. Defendant then claimed that he cut and stabbed his victim in self-defense. The witness, Arthur, appellant's brother-in-law, had no recollection of any meeting between the parties in front of Scott's saloon and testified that when the parties met in front of the taxicab office the policeman told both of them to get off the street and applied to appellant the epithet to which he had testified. Witness did not see any knife in the hand of appellant, but later observed that the policeman had drawn his pistol after shoving appellant away from him and against the wall of an abutting business house, and demanded that appellant drop his knife which he obeyed.

From what we have stated—together with other facts and circumstances shown by the evidence—we are somewhat puzzled that the argument would be made that there was insufficient evidence to sustain the jury's finding of the felony charge. The cases cited by counsel in support thereof contain facts entirely different from those shown in this record. On the contrary, it is not at all difficult to perceive a rankling motive for appellant's unprovoked assault upon his victim growing out of his revengeful feeling because of his former arrest, and, perhaps augmented, by the threat of arrest if he and his brother-in-law did not vacate the streets while in their then intoxicated condition.

While not essential, nor strictly material, appellant introduced witnesses to prove his good character for peace and quietude which showed only the personal opinions of the witnesses introduced. They were asked on cross-examination about former depredations of appellant, one of which was cutting and stabbing Carl White and Slim Adkins, and which appellant admitted in giving his rebuttal testimony.

Our conclusion is that the record is entirely free from error, not containing even a nonprejudicial one, and for which reason the judgment is affirmed.